IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV59

| | |
|---|---|
| CATHY RANISZEWSKI, as personal representative of the Estate of Joseph M. Marett, Jr. and SAV/WAY FOODS, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | ORDER |
| WILLIAM B. DAVIDSON, ) ) | |
| Defendant. ) ) | |

This matter is before the court upon Defendant's Motion for Partial Judgment on the Amended Pleadings pursuant to Rule 12(c).

**FACTUAL BACKGROUND**

Defendant William B. Davidson ("Davidson") is the former owner of Sav/Way Foods, Inc. ("Sav/Way"), which operates a grocery store in Charlotte, North Carolina. Davidson hired Joseph Marett, Jr. ("Marett") to work at the store when he was a teen, and Marett worked his way up to managing the store by January of 2005. Beginning in 2004, Marett and Davidson began to negotiate the terms of a deal whereby Marett would acquire an ownership interest in Sav/Way. Negotiations continued until, on January 1, 2005, Davidson and Marett signed a $5,000,000 Promissory Note. However, Marett and Davidson never prepared or executed a purchase and sale agreement in connection with this Note and never implemented the transfer of ownership pursuant to the Note.

Plaintiffs allege that the parties discussed a draft of an agreement whereby Marett would purchase all shares of the common stock of Sav/Way and would be required to place a $5,000,000 insurance policy on his life to secure the purchase price in the event of his untimely death. In March of 2005, Marett's insurance agent (BB&T) submitted an application to Ohio National Life Assurance Corporation ("Ohio National") for a ten-year term life insurance policy valued at $5,000,000, naming Marett's estate as the beneficiary and describing the proposed acquisition. This application states that the reason for the life insurance policy was to help insure Marett's purchase of a grocery store for $7,000,000. In connection with the application, BB&T faxed Ohio National an Amplified Life Inspection Report which indicated that the purpose of the loan was "business loan protection." Ohio National issued a policy to Marett, but Marett did not accept it. On April 30, 2005, BB&T submitted another application for a ten-year term policy with a face value of $5,000,000 to U.S. Financial Life Insurance Company ("U.S. Financial") naming Marett's estate as the beneficiary. In connection with the application, BB&T also faxed a copy of the 2005 Note.

U.S. Financial approved the application and on July 12, 2005, Marett obtained a $5,000,000 policy which named his estate as the beneficiary. However, on August 16, 2005, Davidson and Marett executed and Marett submitted a Policyholder Service Request to U.S. Financial requesting that Davidson be substituted for Marett's estate as the beneficiary under the policy and that ownership of the policy be assigned from Marett to Davidson. Plaintiffs allege that Marett paid all the premiums on this policy.

Despite continued negotiations, Marett and Davidson did not come to an agreement on the sale of Sav/Way until June 30, 2006. On that date, the two signed a Stock Purchase Agreement ("SPA"), Stock Pledge Agreement, Security Agreement, Promissory Note, and

Guaranty which effectively sold the store to Marett for $3,500,000. Davidson's attorney drafted the documents and represented Defendant throughout the negotiations; Marett was not represented by counsel. Davidson fully financed the sale via the Promissory Note, under which Marett promised to pay Davidson weekly installments of principal and interest until its maturity on January 22, 2011.

Under the Capital Stock Pledge Agreement, full payment of the Note triggers Davidson's obligation to transfer the Sav/Way stock shares, held as security, to Marett. A default would occur if Marett ever ceased to operate and personally manage the business. An event of default gave Davidson the option to reclaim the shares of Sav/Way in exchange for deeming the Note satisfied.

The SPA required that:

> Purchaser will acquire and maintain in force a policy of life insurance on his life with a face value of $4,000,000.00, naming Seller as the beneficiary. No loans against or advances of the policy shall be taken without the consent of the Seller. The policy shall provide that the coverage shall not be cancelled without advance written notice to Seller.

Contract, ¶ 6.1(f), at 3. Marett never obtained a life insurance policy with a face value of $4,000,000, although he maintained the original $5,000,000 policy. Davidson never declared an event of default or otherwise attempted to enforce this contractual obligation. The SPA references and incorporates all the remaining sale documents, including the Note, Stock Pledge Agreement, Security Agreement, and Guaranty. Moreover, the SPA contained an explicit merger clause which provided as follows:

> 11. **Entire Agreement**. This agreement constitutes the final, complete and exclusive statement of the Agreement between the parties hereto as to the subject matter hereof, and all other prior or contemporaneous oral or written agreements

3

> of the parties hereto with respect to the subject matter hereof are merged herein and superseded hereby.

Contract, ¶ 11, at 4–5.

In December 2008, Marett became unable to meet his financial obligations under the Promissory Note, and so the SPA was modified. The modifications cut the weekly payment almost in half, but imposed a strict work schedule and cut Marett's salary.

On November 1, 2010, Marett was found dead in Sav/Way as a result of a self-inflicted gunshot wound. Defendant Davidson, as beneficiary of the life insurance policy, applied to U.S. Financial for the policy benefits on November 4, 2010. On November 18, 2010, U.S. Financial paid Davidson the $5,000,000 policy value, as well as an additional $2,166.77 as a refunded partial policy premium. At the time of Marett's death, less than $1,500,000 was owed on the Promissory Note, approximately $3,500,000 less than the amount of the death benefit paid to Davidson.

Plaintiffs allege that several weeks after Marett's death, Davidson visited the Sav/Way store. Acting store manager, Maria Vergas, reminded Davidson of the life insurance policy and inquired about the status of the Note and SPA in light of the policy. Davidson responded that there was no policy on Marett's life and that Marett never obtained the policy to secure the Note as required by the SPA. At this time, Davidson had already applied for the death benefits. Plaintiff also alleges that in a conversation with an attorney on November 12, Davidson again denied that there was an insurance policy on Marett's life.

The Clerk of Superior Court for Cabarrus County, North Carolina, appointed Cathy Raniszewski as administrator of Marett's Estate. On behalf of the Estate and Sav/Way, Ms. Raniszewski brought suit against Defendant Davidson on January 7, 2011, in the Mecklenburg

4

County Superior Court, seeking the excess policy proceeds. The Complaint alleged that Davidson lacked an insurable interest in Marett's life sufficient to give him any right to the proceeds beyond Marett's indebtedness. Defendant filed a timely removal to this Court on February 2, 2011. After Defendant filed a motion for judgment on the pleadings, Plaintiff amended the Complaint, with Defendant's consent, seeking relief under different legal theories. Defendant has again moved for judgment on the pleadings.

**DISCUSSION**

A motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is reviewed using the same standard used to review motions to dismiss under FED. R. CIV. P. 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–406 (4th Cir. 2002). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court need not accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments. *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. *Ashcroft*, 129 S.Ct. at 1942. In deciding a motion for judgment on the pleadings, a court evaluates the complaint in its entirety and in the context of documents which are "'integral and explicitly relied on in the complaint.'" *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

In this action, Plaintiffs seek to recover $3,500,000, the amount of the life insurance proceeds that exceeds Marett's indebtedness to Davidson. The Amended Complaint asserts claims for Breach of Agreement, Unjust Enrichment, Reformation/Rescission, Resulting Trust, Constructive Trust, Declaratory Judgment, Conversion, Unfair and Deceptive Trade Practices, and for a Preliminary and Permanent Injunction. Defendant seeks to dismiss all of the claims.

Plaintiffs' primary cause of action is for breach of agreement. The SPA contains a choice of law provision designating South Carolina law as the governing law for questions of validity and construction. Plaintiffs allege that the documents, specifically the SPA, somehow evidence an agreement by Davidson to distribute the policy proceeds to Marett's estate in the event of his death. Plaintiffs contend that the "plain language" of the SPA incorporates the parties' agreement that the policy proceeds should be applied to Marett's indebtedness under the Note in the event of his death. Paragraph 6.1(f) of the SPA provides: "**In order to induce [Davidson] to accept his Promissory Note . . . and so long as any obligation of [Marett] to [Davidson] remain unsatisfied**, . . . [Marett] shall acquire and maintain in force a [life insurance policy]." (Emphasis added). Plaintiffs contend that the plain meaning of this language provides that should the proceeds of the policy be distributed before the indebtedness is satisfied, those proceeds should be distributed to Davidson in the amount of the indebtedness, with the remainder to Marett's estate. The problem with the Plaintiffs' argument is that paragraph 6.1(f) means exactly what it says and nothing more: that Marett was obligated to keep a $4 million policy in place while he was indebted to Davidson. The agreement is silent as to the distribution of proceeds. Plaintiffs are attempting to rewrite the terms of the SPA to include a provision that simply is not there. Where an agreement is silent as to a particular term, an integration clause in

6

the contract prohibits the admission of evidence purporting to add the term. *U.S. Leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 318, 364 S.E.2d 202, 205-6 (S.C. Ct. App. 1988).

Plaintiffs next seek to use parol evidence to establish an agreement that excess proceeds of the policy after the satisfaction of the indebtedness should be distributed to Marett's estate. South Carolina law recognizes fraud and ambiguity as exceptions to the parol evidence rule. *See Id.* at 316-17, 364 S.E.2d at 205. Plaintiffs may not rely upon fraud as they have not made any such allegations. Plaintiffs do, however, argue in the alternative that paragraph 6.1(f) of the SPA is ambiguous, and that parol evidence in the form of the Ohio National Application is admissible to show that the policy was intended as "business loan protection" to secure repayment of the Note. "An ambiguous contract is one that can be understood in more than just one way or is unclear because it expresses its purpose in an indefinite manner." *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 205, 687 S.E.2d 714, 718 (S.C. Ct. App. 2009). The court finds that the paragraph at issue cannot be found to be ambiguous. To the contrary, it is quite explicit and unambiguous. Marett was required to maintain a life insurance policy as long as he continued to owe on the Note. Simply because the SPA does not contain the terms that Plaintiffs desire to add does not make the agreement ambiguous. Plaintiffs are seeking to add to the terms of the SPA a new provision that imposes additional obligations on Davidson in excess of those in the fully integrated document. Even if the agreement could be found to be ambiguous, South Carolina law is clear that no parol evidence can be considered when the agreement contains an integration clause. *See U.S. Leasing*, 294 S.C. at 318, 364 S.E. 2d at 205. The SPA contains an explicit merger clause, precluding and superseding any other written or oral agreements.

7

In an attempt to avoid the parol evidence rule, Plaintiffs rely on two exceptions unique to North Carolina law. First of all, South Carolina, not North Carolina law governs the SPA and South Carolina appears to not to recognize these limited exceptions. For example, North Carolina seems to recognize a limited exception to the parol evidence rule when exclusion of the evidence would frustrate the parties' true intentions. *See Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987). North Carolina courts have also recognized that parol evidence may be admitted to show a collateral agreement as to how a promissory note should be repaid. *See Borden, Inc. v. Brower*, 284 N.C. 54, 62, 199 S.E. 2d 414, 420 (1973) (Parol evidence is "competent to show by oral evidence a collateral agreement as to how an instrument for the payment of money should, in fact, be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars . . ..").  Even if North Carolina law applied, however, this limited exception is inapplicable because the *Borden* court's ruling was unique to promissory notes, as the court explained:

> Promissory notes are not generally subject to the parol evidence rule to the same extent as other contracts. Parties drawing such instruments tend to follow a rather definitely standardized form. If collateral terms and conditions had been agreed upon, they may be omitted from the note itself to insure its negotiability.

*Id.* at 61, 46 S.E.2d at 419.

The court agrees with the Defendant that this case does not involve the interpretation of a promissory note or any ancillary agreement regarding how the note was to be paid. Plaintiffs have failed to establish the applicability of any exceptions to the parol evidence rule with regard to their breach of agreement claim. The SPA is unambiguous and contains an explicit merger clause. Accordingly, judgment on the pleadings in favor of the Defendant as to Plaintiffs' breach of agreement claim is appropriate.

8

Plaintiffs' second claim is for unjust enrichment. Defendant argues that *quantum meruit* is not an appropriate remedy when there exists an actual contract between the parties. *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998); *Phillips Refrigeration Co. v. Commercial Credit Co.*, 256 S.C. 500, 503, 183 S.E.2d 330, 332 (S.C. 1971). Not all of Plaintiffs' claims, however, are based upon the SPA. Accordingly, the court declines to dismiss this claim at this stage of the litigation.

Plaintiffs' third claim is for reformation/rescission of the Policyholder Service Request to "accomplish the parties' goal that the Policy secure repayment of Marett's remaining obligations under the Promissory Note and awarding the Excess Proceeds to the estate or, in the alternative, rescinding the Policyholder Service Request and paying all of the Policy proceeds to the Estate." (Amd. Compl. ¶ 120). North Carolina law governs all contracts that insure lives in North Carolina. *See* N.C. Gen. Stat. ¶ 58-3-1. As the grounds for this claim, Plaintiffs allege that Marret and Davidson were mutually mistaken as to the effect of the Policyholder Service Request, or, in the alternative, that Marett was unilaterally mistaken, and Davidson "exercised undue influence over Marett, had reason to know of Marrett's mistake, or both." (Amd. Compl. ¶¶ 118-19).

Assuming that the document at issue could be considered a contract, in his Answer, Davidson has denied that he was mistaken about the effect of the assignment, and his denial bars reformation based upon mutual mistake. *See Lancaster v. Lancaster*, 138 N.C. App. 459, 465-66, 530 S.E.2d 82, 86 (2000). Thus, Plaintiffs are left with their alternative claim that Marett was unilaterally mistaken as to the "effect of the Policyholder Service Request." (Amd. Compl. ¶¶ 118-19). A unilateral mistake may provide grounds for rescission if the other party knew of

9

the mistake or caused the mistake. *Creech v. Melnik*, 347 N.C. 520, 528, 495 S.E.2d 907, 912 (1998). Plaintiffs have alleged that Davidson had reason to know of Marett's mistake. Defendant argues that the mistake was one of law, not fact, and thus cannot be grounds for rescission. However, North Carolina courts have suggested that even a mistake of law can support rescission of an agreement if it is accompanied by fraud, misrepresentation, undue influence, or abuse of confidential relationship. *Swain v. C & N Evans Trucking Co., Inc.*, 126 N.C. App. 332, 484 S.E.2d 845, 848 (1997). Plaintiff has made sufficient allegations at this stage of the litigation to survive a motion for judgment on the pleadings.

In Plaintiffs' Fourth and Fifth Claims for Relief, they seek the remedies of resulting trust and constructive trust. Each of these claims for relief are not stand-alone causes of action, but rather are remedies dependent on Plaintiffs successfully prevailing on one of their causes of action. *See Meekins v. Box*, 152 N.C. App. 379, 382-83, 567 S.E.2d 422, 425 (2002) (discussing the propriety of awarding the "remedy" of resulting trust); *Laws v. Priority Tr. Servs. Of N.C., LLC*, 610 F.Supp. 2d 528, 532 (W.D.N.C. 2009) (dismissing claims for injunctive relief and constructive trust under North Carolina law because "these are remedies rather than separate causes of action"). Plaintiffs could certainly seek to amend their Complaint to properly plead these remedies in their prayer for relief.

Plaintiff's Sixth and Ninth claims are for Declaratory Judgment. The Sixth Claim for Relief requests that the court enter judgment declaring that the Policy was intended to secure payment of the Note only to the extent that it was unpaid at the time of Marett's death and that the excess proceeds are payable to the Estate. The Ninth Claim for Relief seeks a declaratory judgment that Davidson is not entitled to exercise the remedies set forth in paragraphs 5 and 6 of the Stock Pledge Agreement, which would allow Davidson to foreclose on his security interest in

10

the shares of Sav/Way.  The court declines to grant Defendants' Motion for Judgment on the Pleadings as to these claims at this stage in the litigation.  In particular, the court notes that both North Carolina and South Carolina law appear to follow the majority of courts which have held that a creditor may not retain the proceeds of a life insurance policy intended to secure a debt in excess of the amount of the debt.  It appears to the court that the issue of the intent of the debtor is one for the trier of fact.  Contrary to Defendant's argument, this theory of recovery is completely separate from the SPA with its parol evidence issues. Indeed it is conceivable that the SPA itself could be considered as evidence supporting this theory of recovery.

Plaintiffs' Seventh Claim for Relief is for the tort of Conversion  Plaintiffs allege that the Estate is the rightful owner of both the refunded Policy premium and the excess proceeds and that Defendant has wrongfully converted these funds.  The courts finds that this claim is implausible on its face.   A claim of conversion requires two elements: (1) ownership by the plaintiff and (2) a wrongful conversion by defendant.  *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008).   Plaintiffs did not technically own the property they allege was converted.  The Policyholder Service Request named Davidson as the beneficiary, and the carrier distributed the Policy proceeds to him on that basis.  Moreover, Davidson owned the life insurance Policy and was therefore issued the premium refund.  Plaintiffs simply cannot state a claim for conversion.

In their Eighth Claim for Relief, Plaintiffs allege Unfair and Deceptive Trade Practices.  Accepting Plaintiffs' allegations as true, the court finds that they have alleged enough to survive a motion for judgment on the pleadings as to this claim.

Based upon the foregoing,

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Judgment on the Pleadings is hereby GRANTED IN PART AND DENIED IN PART.

.

Signed: October 17, 2011

Graham C. Mullen
United States District Judge